## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IVETTE DASILVA, | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | |
| v. | : | NO. 07-5533 |
| | : | |
| CAMBRIDGE LEE INDUSTRIES, | : | |
| LLC, | : | |
| Defendant | : | |

### M E M O R A N D U M

STENGEL, J.                                                    November 12th, 2008

Plaintiff Ivette Dasilva claims that she was discriminated against on the basis of her sex (female) by defendant Cambridge-Lee Industries, LLC[1] in her job as a line worker, insulation coiler, packer and bundler.  Cambridge-Lee has filed a motion for summary judgment.[2]  For the following reasons, defendant's motion is denied.

### I. BACKGROUND[3]

---

[1]Specifically, Dasilva brings claims under Title VII of the Civil Rights Act of 1964 as amended by the Equal Opportunities Act of 1972, the Civil Rights Act of 1991, 42 U.S.C. 2000e-1, *et seq.* and under the Pennsylvania Human Relations Act, 43 P.S. §951.

[2]Pursuant to Fed. R. Civ. P. 56(c) (Document #13).

[3]The following factual recitation is gleaned from Dasilva's response to Cambridge-Lee's motion for summary judgment, as well as evidence in the record.  The evidence has been viewed in the light most favorable to Dasilva, the non-moving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

Dasilva was hired by Cambridge-Lee on October 26, 1996. She worked for 8-1/2 years as a line worker, insulation coiler and packer in Cambridge-Lee's Plant 5. While at Plant 5, Dasilva also worked as a bundler, handling copper pipe that was 60 feet long and weighed 50 to 60 pounds.  Dasilva's supervisor stated that, during this time, Dasilva was better at her job than her male coworkers. After Cambridge-Lee moved the operations of Plant 5 to Mexico, Dasilva was instructed to report to Plant 1, which served as Cambridge-Lee's distribution center.[4]

After Dasilva began working in Plant 1, she was informed for the first time that she would be on a thirty (30) day probation.  Dasilva worked in Plant 1 for approximately two to three months.[5]  Despite Plant 1's very steady work flow, Dasilva was transferred from that position and placed in Plant 3 as a bundler.[6] Dasilva performed the same bundling processes in Plant 3 that she had in Plant 5; the copper pipes were of the same size and length. Dasilva experienced no

---

[4]Dasilva and her female coworker were the only employees who volunteered to travel to Mexico in order to train the new employees.  They were both assured by various management level employees that they would be guaranteed a job when they returned.

[5]It is unclear from the record whether Dasilva worked only at Plant 1 or at both Plants 1 and 4 during this period.

[6]Plant 3 was different than the other plants to which Dasilva had been assigned.  Plant 3 did not have a women's restroom with lockers and showers.  Dasilva was required to use the women's facilities at the personnel office which was approximately 100 yards away (a five-minute walk).

problems lifting the pipe, dropping the pipe or performing all necessary tasks for the bundler position.[7]  Referencing the fact that there were no written complaints in her file, Dasilva contends that she was an exemplary employee. While Dasilva and one other female were employed by Cambridge-Lee, Dasilva's supervisors, Mr. Kevin Rapp and Mr. Demrick Cook, heard male coworkers complain about women working for the company, specifically in Plant 3. In Rapp's testimony, he admitted that there were discussions with Mr. Leonard Dietz, the Plant 3 manager, about whether women could adequately perform the duties of Plant 3.

Dasilva and the other female employee were laid off on March 8, 2006 supposedly due to a reduction in work force, even though Dietz knew they were going to be hiring for new positions on second shift. Cambridge-Lee claims that Dasilva was laid off and not recalled because she demonstrated on a daily basis that she was not physically capable of performing the tasks involved in the Plant 3 position. To replace Dasilva and the other female employee, Dietz trained two new men on first shift until the positions were permanently filled by two men.[8]  No

---

[7]Cambridge-Lee asserts that Dasilva fell down the steps in Plant 3, but she vehemently denies this allegation.

[8]Three employees were laid off in March 2006, including the only two females who worked in the plants.  The male employee who was laid off was recalled that same month.  The two females remained laid off indefinitely.

females were hired for Plant 3 from January of 2006 until October 22, 2007.

Dasilva testified that she was capable of doing many of the lighter duty positions in Plant 3, including bundler, the billet, the billet press, the billet saw, the serviceman position, the janitor position, magna-tester, back-end saw, floater, dye room, and heater operator. Although Dasilva was not proficient at operating the finish saw, there was no company policy indicating how many positions an employee had to be capable of performing.

After Dasilva was laid off, Dietz advised her to check the schedule at Plant 3 every Thursday to see if she had been recalled. Additionally, Ms. Sandra Valencia in the Human Resources Department classified Dasilva's situation as an indefinite layoff rather than a termination. Dasilva made various attempts to call and meet with Valencia; however she was not allowed or able to speak with her. In May 2006, when Dasilva saw Cambridge-Lee's local ad looking to hire people for the first, second and third shifts, she began to search for a new position. Dasilva applied for four positions and was hired for two of them, each time increasing her wages.

Dasilva filed this lawsuit on December 31, 2007 seeking injunctive and declaratory relief, back pay, rehire or alternatively front pay, compensatory and

4

punitive damages, costs and attorney's fees from Cambridge-Lee. The complaint raises claims of intentional discrimination on the basis of Dasilva's sex in violation of (1) Section 703 of Title VII, 42 U.S.C. §2000e-2, and (2) Pennsylvania Human Relations Act 43 P.S. §951. Cambridge-Lee filed the instant motion for summary judgment (Document #13) on May 19, 2008. Dasilva responded on June 16, 2008 (Document #20).

## II. STANDARD FOR SUMMARY JUDGMENT

Summary judgment shall be awarded "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" only if it might affect the outcome of the suit under governing law. Id.

A party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Where the non-moving party

bears the burden of proof on a particular issue at trial, the movant's initial Celotex

burden can be met simply by "pointing out to the district court that there is an

absence of evidence to support the non-moving party's case." Id. at 325. After the

moving party has met its initial burden, "the adverse party's response, by affidavits

or otherwise as provided in this rule, must set forth specific facts showing that

there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Summary judgment is

appropriate if the non-moving party fails to rebut by making a factual showing

"sufficient to establish the existence of an element essential to that party's case,

and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at

322. All inferences must be drawn and all doubts resolved in favor of the

nonmoving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962);

Gordon v.Youmans, 358 F.2d 261, 262 (2d Cir. 1965); Gans v. Mundy, 762 F.2d

338, 341 (3d Cir. 1985); Liberty Lobby, 477 U.S. at 255. The court must decide

not whether the evidence unmistakably favors one side or the other but whether a

fair-minded jury could return a verdict for the plaintiff on the evidence presented.

Liberty Lobby, 477 U.S. at 252. If the non-moving party has met the

extraordinarily low burden of evidence and offered a genuine issue of material

fact, then the court cannot credit the movant's version of events against the

6

opponent, even if the quantity of the movant's evidence far outweighs that of its opponent.  <u>Big Apple BMW, Inc. v. BMW of North America, Inc.</u>, 974 F.2d 1358, 1363 (3d Cir. 1992).

### III. DISCUSSION

A plaintiff bringing a discrimination claim under Title VII bears the "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff." <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 507 (1993) (quoting <u>Texas Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 253 (1981)). Once a plaintiff has demonstrated a *prime facie* case of discrimination then the plaintiff is entitled to "a presumption that the employer unlawfully discriminated against the employee." <u>St. Mary's</u>, 509 U.S. at 506 (quoting <u>Burdine</u>, 450 U.S. at 254).  To rebut the presumption, the employer bears the burden of "articulat[ing] some legitimate, nondiscriminatory reason for the employee's rejection." <u>McDonnell-Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973).  If the employer carries the burden, the plaintiff then has an opportunity to demonstrate that the reasons offered by the employer were not the true reasons, but rather a pretext for discrimination. <u>Id.</u> at 804.  The plaintiff must produce evidence (direct or circumstantial) from which a jury can reasonably infer either

(1) that the employer's reasons are not believable or (2) that a discriminatory reason was - more likely than not - the true reason for the decision.  This inference might arise from the inconsistencies, weaknesses, or implausibilities in the employer's reasons.  Fuentes v. Perskie, 32 F. 3d 759, 762 (3d Cir. 1994). Here, Dasilva has met both her burden for a *prima facie* case of discriminatory discharge and her burden for pretext.

## A.  *Prima Facie* Case

To establish a *prima facie* case of employment discrimination, a plaintiff must show (1) that she is a member of the protected class, (2) she was qualified for the position, (3) despite these qualifications, she was terminated from that position, and (4) she was replaced by someone not in a protected class, or someone in a non-protected class, similarly situated was treated more favorably. McDonnell- Douglas Corp., 411 U.S. at 802; Ezold v. Wolf, Block, Schorr and Solis-Cohen, 983 F.2d 509, 522 (3d Cir. 1992), cert. denied, 510 U.S. 826 (1993); Josey v. John R. Hollingsworth Corp., 996 F.2d 632, 638 (3d Cir. 1993).

Cambridge-Lee concedes that Dasilva met the first prong of this McDonnell- Douglas  test.  Cambridge-Lee argues, however, that Dasilva was not qualified for the position in Plant 3 because she could not perform the physical

tasks necessary to complete the job in a timely and safe manner. Cambridge-Lee asserts that Dasilva experienced problems lifting the pipe, dropped the pipe and repeatedly fell down the steps; Dasilva denies these allegations.  Dasilva argues that she was qualified and terminated despite her qualifications. The United States Court of Appeals for the Third Circuit has ruled that "[s]atisfactory performance of duties over a long period of time leading to a promotion clearly established [her] qualifications for the job." Jalil v. Avdel Corp., 873 F.2d 701, 707 (3d Cir. 1989), cert. denied, 493 U.S. 1023 (1990); Weldon v. Kraft, 896 F.2d 793, 798-99 (3d Cir. 1990).  In Jalil, the plaintiff was an active participant in union activities and was elected as president of his local union in 1984. 873 F.2d at 702. A few months later, the plaintiff was terminated from his job and filed a suit claiming retaliatory discharge. Id. at 703. The court determined that the plaintiff's eight year employment record coupled with his promotion to "lead man" sufficiently established his qualifications and, therefore, satisfied the second and third prongs necessary to establish a *prima facie* case of discriminatory discharge. Id. at 707.

Dasilva has presented evidence that she was continuously employed as a bundler in Plant 5 for 8-1/2 years, always receiving good performance evaluations from her supervisors.  Further, she testified that the bundler position at Plant 5 was identical to the bundler position at Plant 3 in all material respects. Therefore,

9

under <u>Jalil</u>, Dasilva has satisfied the second and third prongs necessary to establish a *prima facie* case of discriminatory discharge.

Cambridge-Lee contends that Dasilva cannot prove that any men were hired as permanent employees for a position in Plant 3 who were not qualified, but this fact does not need to be proven in order to meet the fourth prong. Dasilva claims that hiring two male employees to replace two female employees (who were allegedly terminated to reduce the workforce) satisfies the last prong. Hiring someone who is not in the protected class with fewer or comparable qualifications as a replacement commonly gives rise to an inference of unlawful discrimination. <u>Bullock v. Children's Hosp.</u>, 71 F. Supp. 2d 482, 487 (E.D. Pa. 1999). <u>See also</u> <u>Waldron v. SL Industries</u>, 56 F.3d 491, 494 (3d Cir. 1995); <u>Sheridan v. E.I. DuPont de Nemours and Co.</u>, 100 F.3d 1061, 1066-67 (3d Cir. 1996); <u>Barber v. CSX Distribution Services</u>, 68 F.3d 694, 698 (3d Cir. 1995).

The fourth prong necessary to establish a *prima facie* case of discriminatory discharge has been extensively analyzed in age discrimination cases. In <u>Barber</u>, the plaintiff brought an action against his former employer for violating the Age Discrimination in Employment Act by promoting a younger candidate. 68 F.3d at 694. Discussing the minimal standard applied to the fourth prong in the age

discrimination context, the Third Circuit found that "[c]ourts that have addressed this issue squarely have universally permitted a *prima facie* case to be shown through proof that the favored person was younger than plaintiff." Id. at 699 (quoting Maxfield v. Sinclair Int'l, 766 F.2d 788, 792 (3d Cir. 1985), cert. denied, 474 U.S. 1057.

By analogy to Barber, all Dasilva must show is that the person hired for the position in Plant 3 was a male with comparable qualifications. Here, the new male hires had less seniority with the company than Dasilva.  Further there is no evidence that the new male hires possessed superior physical capabilities. In fact, Cambridge-Lee did not require the new hires to undergo a physical aptitude test. Based on the foregoing analysis, Dasilva meets the fourth prong because replacement by a member of a non-protected class with fewer qualifications gives rise to an inference of unlawful discrimination. Therefore, Dasilva has satisfied the McDonnell- Douglas test and presented a *prima facie* case of discrimination.

### B.  Pretext

Once a *prima facie* case is made, the plaintiff must show, by a preponderance of the evidence, that the employer's proffered reasons were merely a pretext (i.e., that their stated reasons were not the real motivation for the

unfavorable action). <u>Sarullo v. U.S. Postal Service</u>, 352 F.3d 789, 797 (3d Cir. 2003).  A plaintiff does not have to prove at the summary judgment stage that the employer's purported reasons for its actions were false; the plaintiff need only to introduce evidence sufficient to raise a doubt as to whether they were the true reasons.  <u>Nowosad v. Villanova Univ.</u>, No. 97-5881, 1999 WL 322486, at *5 (E.D. Pa. 1999).

Cambridge-Lee argues that, even assuming Dasilva can demonstrate a *prima facie* case of gender discrimination, she cannot prove by a preponderance of the evidence that Cambridge-Lee's lawful reason amounts to pretext. A plaintiff can show pretext by either: (1) casting sufficient doubt upon the legitimate reasons proffered by the defendants so that a reasonable fact finder could conclude that the reason was a post hoc fabrication or else did not actually motivate the employment action or (2) by identifying evidence that would allow a reasonable fact finder to "infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." <u>Fuentes v. Perskie</u>, 32 F.3d 759, 762 (3d Cir. 1944).  Dasilva has done both.

The facts in this case are similar to those of <u>Shotzberger v. State of Delaware Dept. of Correction</u>, 2004 WL 758354 (D. Del. 2004).  In <u>Shotzberger</u>,

the plaintiff alleged that the defendant decided not to promote her based on her gender, and promoted a less qualified male employee. Id. at *1.  In their motion for summary judgment, the defendants claimed that the plaintiff could not satisfy, under a pretext theory of discrimination, her *prima facie* burden of discrimination. Id.  Although the defendants presented evidence that their promotion decision was based on legitimate criteria including the male candidate's more extensive field experience and greater expertise with department computer systems, the court denied the defendants' motion for summary judgment. Id. at *4. The court concluded that if the factfinder were to accept the plaintiff's version of the facts, they could reasonably conclude that defendants' decision was not based on the non-discriminatory reasons identified. Id.

Like the defendants in Shotzberger, Cambridge-Lee asserts a non-discriminatory reason for Dasilva's termination. Cambridge-Lee claims that Dasilva was not recalled to Plant 3 because of her demonstrated inability to perform the job's duties and because of safety concerns.  Specifically, Cambridge-Lee asserts the following: Dasilva could not manually lift the mandrel tools; she fell down steps twice (receiving burns in the process); she operated the crane causing the lift material to shift toward fellow employees; and, while operating the crane, she was scared and threw the crane box at the training serviceman.

13

However, in Dietz's own deposition, he admitted that Dasilva never preformed a job that required the manual lifting of mandrel tools.  He also admitted that during his management of Plant 3 he never saw Dasilva operate the crane. Dasilva denies ever falling down steps, operating the crane or burning herself while working at Plant 3. Based on the foregoing analysis, Dasilva has introduced sufficient evidence to raise a doubt as to whether Cambridge-Lee's lawful reason actually motivated the adverse employment action.

### C. Failure to Mitigate

Cambridge-Lee argues that because Dasilva failed to mitigate damages to some extent, she wholly forfeits the right to back pay under Title VII. The Third Circuit has rejected the argument that failure to mitigate completely forfeits back-pay. Booker v. Taylor Milk Co., Inc., 64 F.3d 860 (3d Cir. 1995).  In Booker, the African American plaintiff alleged that his termination was racially motivated. Id. The defendant claimed that the plaintiff's failure to mitigate forfeited his right to back pay.  Id.  The Third Circuit's ruling relied on the plain language of section 2000e-5 which states that failing to mitigate could *reduce or decrease* a back pay award, not cut off the right to any back pay.  Id. at 866.  See also Tubari Ltd., Inc., v. NLRB, 959 F.2d 451, 453-54 (3d Cir. 1992); Anastasio v. Schering Corp., 838

14

F.2d 701, 707-08 (3d Cir. 1988).

Further, the court found that entirely eliminating an award of back pay would undermine the whole purpose of Title VII, noting that "back pay is designed to restore a victim of discrimination to the economic position he would have enjoyed absent the unlawful discrimination." Booker, 64 F.3d at 866.

Based on the Third Circuit's ruling that any failure to mitigate will not wholly forfeit back pay, Dasilva may be entitled to some amount of back pay regardless of her efforts to mitigate.[9]

## IV. CONCLUSION

For the foregoing reasons, Cambridge-Lee's summary judgment motion is denied.

An appropriate order follows.

---

[9]Accordingly, I need not examine Cambridge-Lee's allegation that Dasilva failed to mitigate damages.

15

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **IVETTE DASILVA,** | : | **CIVIL ACTION** |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **NO. 07-5533** |
| | : | |
| **CAMBRIDGE LEE INDUSTRIES,** | : | |
| **LLC,** | : | |
| **Defendant** | : | |

## ORDER

**AND NOW**, this 12th day of November, 2008, upon consideration of defendant's motion for summary judgment (Document #13), it is hereby **ORDERED** that defendant's motion is **DENIED**.


BY THE COURT:


 /s/ Lawrence F. Stengel
_____

LAWRENCE F. STENGEL, J.